IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

A2403035

| | | |
|---|---|---|
| PREMIERE AUTOMOTIVE GROUP INC., 1140 Main Street Milford, Ohio 45150 | : : : | CASE NO. _____ JUDGE _____ |
| Plaintiff, | : | |
| v. | : | **COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,** |
| ALLIED NEW WORLD SPECIALTY INSURANCE COMPANY, 1690 New Britain Avenue, Suite 101 Farmington, Connecticut 06032 | : : | **BAD FAITH AND NEGLIGENCE** **JURY DEMAND ENDORSED HEREON** |
| and | : | |
| LOCKTON AFFINITY, LLC, 10895 Lowell Avenue, Suite 300 Overland Park, Kansas 66210 | : : | |
| serve: Corporate Creations Network, Inc., 199 E. Court Street Cincinnati, Ohio 45202 | : : | |
| Defendants. | : | |

Comes now the Plaintiff, Premier Automotive Group Inc. ("PAG"), by and through counsel, and for its complaint against Allied New World Specialty Insurance Company ("Allied") and Lockton Affinity, LLC ("Lockton")(collectively "Defendants"), states as follows:

1. PAG brings this action, inter alia, for declaratory relief pursuant to Ohio Revised Code Chapter §2721, et seq., and Rule 57 of the Ohio Rules of Civil Procedure seeking a determination of the rights and responsibilities of the parties under a contract of insurance.

Exhibit 2

2. There exists an actual controversy between the parties concerning the Defendants' obligations under Ohio law to provide coverage to Premier for the losses to its property identified below.

## PARTIES

3. Plaintiff Premier is an Ohio corporation whose principle place of business is located at 1140 Main Street, Milford, Hamilton County, Ohio, 45219.

4. Premier is in the business of selling used cars and servicing and repairing some of those cars that it purchases for resale.

5. This action arose out of tornado damage to a garage/body shop/office owned by Premier and located at 6793 Goshen Road, Goshen, Ohio, 45122 (the "Building").

6. Defendant Allied is a foreign (Connecticut) insurance company, licensed to transact business in the State of Ohio, that provides, among other things, specialty insurance "packages" for the automobile dealership market and provided coverage to Premier for the Building out of which its claims arose.

7. Lockton is Premier's insurance broker and sold the Allied insurance policy at issue in this case to Premier.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court as the subject of the dispute is the interpretation of an insurance contract to a business located in Ohio for property located in Ohio.

9. Venue is proper in Hamilton County because Premier, the owner of the insurance policy at issue, is located in Hamilton County.

Exhibit 2

## THE CONTRACT OF INSURANCE

10. The Defendants issued the following Commercial Policy to Premier :

| Policy Number | Policy Period |
|---|---|
| 6203-0843-03 | 08/05/2021 to 08/05/2022 |

11. The policy is not attached in full to this Complaint because the policy is voluminous and Defendants have a copy.

## FACTUAL BACKGROUND

12. On the afternoon of July 6, 2022, the Building was damaged by an EF2 tornado that struck the Goshen, Ohio, area.

13. The Building was purchased on June 27, 2018, for $250,000 in a combined sale that included three parcels of land totaling +/- 1.56 acres that included the Building, a few small utility buildings, and a residential house.

14. At the time of purchase, the fair market value of the Building, which was over 9,000 square feet with high ceiling elevations and commercial automotive fixtures, was more than $600,000 and the cost to rebuild was higher.

15. After the purchase, Premier contacted Lockton to insure the new property as an "add" to its current Allied policy.

16. Premier specifically requested a replacement cost policy (vs. actual cash value ("ACV") which deducts condition, depreciation, etc) because, in the event of a loss, it wanted the Building rebuilt or replaced without having to come up with tens or hundreds of thousands of dollars "out of pocket" after a loss.

17. The value of the Building, which was in excess of $600,000, was listed as $250,000 with no rational basis to support how that number was determined.

Exhibit 2

18. Because the policy required 90% "coinsurance", meaning that the Building had to be insured for 90% of its value for the replacement cost provision to be "triggered" or activated, the Building was woefully underinsured.

19. Because of the 90% co-insurance provision, in the event the Building was underinsured at the time of loss, the policy allowed the insurer to use a ratio of the amount of insurance coverage to the fair market value of the Building, so the insured, Premier, would not receive the full replacement value of the damage to the Building.

20. Both Allied and Lockton were aware of the 90% co-insurance provision and the necessity for an appraisal or audit of the value of the property, and the Building, at the time the policy was written or in the four to five years thereafter.

21. Neither Allied nor Lockton appraised the value of the property, or the Building, on or after the inception date of the policy or after, despite the fact it was aware that insureds, even commercially sophisticated ones, do not understand the concept of co-insurance and the need for an appraisal of the Building.

22. In other words, Allied and Lockton sold Premier a "replacement cost policy" on the Building that it would never be able to use or receive the benefit of, i.e., a "pig in a poke".

23. The replacement cost coverage was "illusory coverage" because the insured, Premier, bought replacement cost coverage but, because the building value was incorrect, and no appraisal was performed, it could never receive the full benefit of its bargain.

24. It appears Allied and Lockton simply took the purchase price paid for all three parcels and all four buildings, $250,000, and placed it on the Building, though that

Exhibit 2

number was obviously inadequate.

25. Allied and Lockton were aware of the need to audit and appraise the value of the Building, and the entire portfolio of Premier's property, because the underwriters for Allied, with the knowledge and participation of Lockton, audited the policy after the first year of coverage (2018 – 2019) and stated the value of Premier's vehicle inventory listed in the policy declarations was far too low to replace the inventory in the event of a catastrophic or total loss.

26. The first year of comprehensive coverage (fire, water, wind damage to the vehicles) had a limit of $650,000 with a premium of $1,783. Before the second year of coverage (2019 – 2020) the insurer, Allied, with the knowledge of Lockton, audited the policy and required Premier to increase the limit for comprehensive coverage to $3,000,000 with an increase of premium to $7,566 for the same number of vehicles.

27. Premier paid the increased premium for vehicle coverage without objection because it wanted and needed the appropriate coverage and relied upon Allied and Lockton to place the values on the Premier's property and coverages that were commensurate with the risk and value of the vehicle inventory.

28. Despite its obligation to appraise the Building for replacement cost at the time the policy incepted, or anytime in the four to five years thereafter, Allied and Lockton did not perform the same audit or evaluation of the buildings and increase the property damage coverage as required to meet the 90% co-insurance requirement.

29. Allied and Lockton's use of the purchase price for the property to establish the value of the Building was negligent, particularly since they had the right in the policy to audit Premier's property in order to increase the premiums and coverages, just as

Exhibit 2

they did with the inventory value as described earlier.

30. The replacement cost coverage Building could never be triggered, or brought into effect, if the property value is too low from the start because the 90% coinsurance value would not be met.

31. After the tornado damaged the building, Allied's adjuster valued the property damage to the Building at $167,356 and the total value of the Building at $52,531.

32. Because of Allied and Lockton's negligent undervaluation of the Building, the amount of recovery was $67,361.29, resulting in an uninsured loss of $99,995.

## FIRST CLAIM FOR RELIEF
## DECLARATORY RELIEF UNDER R.C §2721

33. Premier repeats and realleges Paragraphs 1 through 32 as if fully set forth herein.

34. Because of Allied and Lockton's failure to appraise the Building, Premier was unable to obtain the replacement cost coverage that it requested and purchased.

35. As a result, an actual controversy exists between the Defendants and Premier regarding the Defendants' coverage obligations related to this claim, and the Court can resolve the controversy through a declaratory judgment.

36. Premier demands that this Court declare the Defendants are obligated to indemnify it for all losses to the Building pursuant to R.C. §2721 and ORCP 57.

## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT

37. Premier repeats and realleges Paragraphs 1 through 36 as if fully set forth herein.

Exhibit 2

38. The Defendants placed and issued a contract of insurance that provides coverage for Premier's losses on the Building as alleged herein.

39. The Defendants denied and/or reduced the replacement cost coverage for the subject loss to actual cash value on the basis that the Building was underinsured when they were responsible for determining the insurable value at the time the policy was placed.

40. By failing to provide an adequate value on the Building, Premier was denied the replacement coverage that it purchased that would cover the subject loss, and the Defendants have breached the terms and conditions of the insurance contract with Premier.

41. As a result of The Defendants' failure to provide coverage as required by the insurance contract, Premier has been damaged in an amount in excess of $25,000.00 to be determined at trial.

### THIRD CLAIM FOR RELIEF
### BAD FAITH

42. Premier repeats and realleges Paragraphs 1 through 41 as if fully set forth herein.

43. The Defendants failure to appraise the Building and underinsure it so that it would not qualify for replacement cost coverage created illusory coverage on the Building and was in bad faith, as no reasonable insurer would issue a policy that contained replacement cost coverage on the Building that its insured could never use.

44. Defendant's actions were in violation of OAC 3901-1-54 (G)(2).

45. Defendant's actions were in violation of its own internal auditing and

Exhibit 2

underwriting procedures.

46. Defendant's actions were done in willful, reckless disregard for the rights of the Plaintiff and in bad faith and Premier has been damaged in an amount in excess of $25,000.00 to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### NEGLIGENCE

47. Premier repeats and realleges Paragraphs 1 through 39 as if fully set forth herein.

48. The Defendants negligently valued the Building when the coverage was placed or at any time thereafter as stated above.

49. The Defendants owed a duty of care to Premier to act reasonably in their sale and placement of coverage for the Building in light of the available facts and policy language and they negligently breached the duties owed to Premier.

50. The Defendants' negligent conduct has caused damage to the Premier and prevented it from repairing the damage to the Building under replacement cost coverage.

51. As a direct and proximate result of the negligent conduct of the Defendants as alleged in this Complaint, Premier has been damaged in an amount in excess of $25,000.00 to be determined at trial.

**WHEREFORE**, Premier Automotive Group Inc. demands judgment as follows:

1. that the Court declare that Defendants are obligated under the Policy to provide replacement cost coverage for Premier's loss which includes the materials and labor to complete repairs and restoration of the Building;

2. for compensatory damages in favor of the Plaintiff and against the Defendants in an amount exceeding $100,000.00, the exact amount of which shall be

Exhibit 2

determined at trial;

    3.    for punitive damages and attorneys' fees; and

    4.    for an award of costs, pre- and post-judgment interest and any other relief deemed appropriate by the Court.

Respectfully Submitted,

/s/ Gregory J. Berberich
_____
Gregory J. Berberich (0043651)
9087 Gardenia Court
Covington, Kentucky 41015
Mobile (513) 604-9322
Facsimile (513) 895-9315
greg@berberichlaw.com
Attorney for Plaintiff, Premier Automotive Group Inc.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues so triable.

/s/ Gregory J. Berberich
_____
Gregory J. Berberich (0043651)

## INSTRUCTIONS FOR SERVICE

The Clerk of Courts is hereby instructed to serve the above Complaint upon the Defendants by certified mail, return receipt requested, at the addresses listed in the caption.

/s/ Gregory J. Berberich
_____
Gregory J. Berberich (0043651)

Exhibit 2




D141985922 CLF

| COURT OF COMMON PLEAS<br>HAMILTON COUNTY, OHIO | CLASSIFICATION FORM<br>WWW.COURTCLERK.ORG | Pavan Parikh<br>CLERK OF COURTS |
|---|---|---|

CASE NUMBER: **A2403035** PLAINTIFF: **Premier Automotive Group Inc.**

PURSUANT TO SUPERINTENDENCE RULE 4, THIS CASE WAS ORIGINALLY FILED AND DISMISSED

UNDER CASE NUMBER: _____ BY JUDGE _____

Is this case appropriate to assign to the Commercial Docket (See Superintendence Rule 49.05)?  ☐ Yes  ☐ No

## PLEASE INDICATE CLASSIFICATION INTO WHICH THIS CASE FALLS (please only check one):

☐ Other Tort – C360
☐ Personal Injury – C310
☐ Wrongful Death – C320
☐ Vehicle Accident – C370

☐ Professional Tort – A300
☐ Personal Injury – A310
☐ Wrongful Death – A320
☐ Legal Malpractice – A330
☐ Medical Malpractice – A340

☐ Product Liability – B350
☐ Personal Injury – B310
☐ Wrongful Death – B320

☐ Worker's Compensation Non-Compliant Employer – D410
☐ Appeal – D420

☐ Administrative Appeals – F600
☐ Appeal Civil Service – F610
☐ Appeal Motor Vehicle – F620
☐ Appeal Unemployment – F630
☐ Appeal Liquor – F640

☐ Appeal Taxes – F650
☐ Appeal Zoning – F660

☐ Certificate of Qualification – H600
☐ Other Civil – H700-34

☐ Appropriation – H710
☐ Accounting – H720
☐ Beyond Jurisdiction –730
☑ Breach of Contract – 740
☐ Cancel Land Contract – 750
☐ Change of Venue – H760
☐ Class Action – H770
☐ Convey Declared Void – H780
☑ Declaratory Judgment – H790
☐ Discharge Mechanics Lien – H800
☐ Dissolve Partnership – H810
☐ CONSUMER SALES ACT (1345 ORC) – H820
☐ Check here if relief includes declaratory judgment, injunction or class action recovery – H825
☐ Habeas Corpus – H830
☐ Injunction – H840
☐ Mandamus – H850
☐ On Account – H860
☐ Partition – H870
☐ Quiet Title – H880
☐ Replevin – H890
☐ Sale of Real Estate – H900
☐ Specific Performance – 910
☐ Restraining Order – H920
☐ Testimony – H930-21
☐ Environmental – H940
☐ Cognovit – H950
☐ Menacing by Stalking – H960
☐ Repo Title – Transfer of Title Only –970
☐ Court Ordered Title – H980
☐ Injunction Sexual Predator – 990
☐ SB 10 – Termination – H690
☐ SB 10 – Reclassification – H697

DATE: **7/8/24**       ATTORNEY (PRINT): **Gregory J. Berberich**

OHIO SUPREME COURT NUMBER: **0043651**

Revised 04/01/2024

Exhibit 2